The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and the Honorable Court. The first case for argument this morning is 20-1330, Apple v. Universal Secure Registry. Ms. Ahmadi, whenever you're ready.  My name is Brittany Ahmadi, and I represent Apple. I'll give you three minutes of time for rebuttal. This is a case where the two prior art references at issue disclose systems that are nearly identical, not just to the Challenge 539 patent claims, but also to each other. All three disclose systems for facilitating secure transactions by withholding sensitive user information from the merchant and instead using a time-varying code in its place. The Board's conclusion that the Challenge claims are patentable was based on three errors. I'll start first with the withholding account-identifying information from the provider limitation. The Board's finding that the prior art failed to disclose this limitation was wrong for two reasons. First, the Board erred in applying its own construction by interpreting the claims to require withholding all account-identifying information. That interpretation is inconsistent with the specification, which makes clear that only some, not all, personal information is withheld from the provider. Counsel, is this a dispositive difference between one result and the other? Yes, Your Honor. If our proposed construction or interpretation of the claims is correct, there's no dispute that both Reber and Franklin, the two prior art references at issue in this appeal, disclose that limitation. Okay, proceed. And the proposed interpretation that Apple presented below before the Board and presents on appeal is consistent with the specification, which describes the invention as relating to a system that may be used to, quote, selectively provide personal, financial, or other information about a person to authorized users. In particular, the patent explains that the system will generally allow anyone to access basic personal information. In other words, some personal information is provided to the merchant in this system. The embodiment in the specification similarly describes withholding particular information, such as account numbers, credit card numbers, address, or telephone numbers, based on the particular circumstances at issue. USR has not identified a single embodiment described in the 539 patent that describes withholding all personal information from the provider. The Board's interpretation of the claims was also inconsistent with the claims, which merely require withholding account-identifying information from the provider and providing that withheld account-identifying information to a third party. Nothing in the claims requires withholding all account-identifying information from the provider. If that were the case, all account-identifying information would then have to also be provided to the third party, which is inconsistent with the teachings in the specification. Can I just ask you this question? This is just Toronto. Does the use of the definite article, the, in front of the account information matter here? Does that suggest that whatever in the assessing limitation constitutes account-identifying information, all of that must be provided to a third party but not to the, let's just call it the merchant? That's correct, Your Honor. So the full limitation is information, including account-identifying information, wherein the account-identifying information is not provided to the provider and the account-identifying information is provided to a third party. So the antecedent basis is account-identifying information, which is within the broader scope of information, and it's that information that is both withheld from the merchant as well as provided to the third party. And I think it's important to read those limitations in conjunction with each other because it makes clear that whatever is being withheld must be provided to the third party, and that's also consistent with the teachings of the specification. So there's an example in the specification in which some of what qualifies as account-identifying information, which is a quite capacious category, is, I think as you suggest, is that doesn't meet the providing limitation. Even though it is account-identifying information, it is provided to one but not provided to the other. That's correct, Your Honor. So the specification teaches, for example, withholding credit card information from the merchant and instead providing that information to a bank or some other third party, and similarly teaches withholding the address information from the merchant and instead providing that information to the delivery service. So it's reading those two limitations in connection with each other that whatever it is that you're withholding is what's being provided to the third party. Ms. Amati, this is Judge Prost. This is just kind of a housekeeping question before your time runs out. Are there other proceedings, including a 101 proceeding, that involves all of the claims in dispute in this case, also pending before our court? Yes, Your Honor. So the 101 proceeding involves all claims of the 539 patent with 22 as the exemplary claim, and then separately this proceeding only involves some of the claims, so claims 1 through 3, 16, 21 through 24, 37, and 38. There's also the separate visa IPR proceeding involving this patent, which will be argued next, which involves all of the claims in this proceeding, and in addition claims 4, 9, 25, and 31. And all of these claims are the subject of a 101, a current case pending before this court involving ineligibility under 101? Is that correct? That's correct, Your Honor. All right, thank you. And just to complete the loop, if in that case, the district court case, if the district court's invalidation under 101 is upheld, would the result here be to declare this proceeding moot and remand it for dismissal as moot under Munsingware principles? I believe that's correct, Your Honor. If there's a final judgment in the district court action holding all of the claims unpatentable, then this appeal would be moot. Under the correct interpretation of the claims, there's no dispute that both Reber and Franklin teach withholding account identifying information, but even under the board's proposed interpretation, that limitation is sought by the prior art, including Franklin, which teaches that no account identifying information is provided to the merchant, and that was found in the claims even under the board's erroneous interpretation of the claims. If I could turn to the second limitation at issue, which is the third-party limitation, this is the requirement that the withheld account identifying information be provided to a third party. The board committed three errors in assessing this limitation. First, the board erred by failing to consider Apple's arguments in reply, and as this court has explained in several cases, including Anacar Pharmaceuticals and Andrea Electronics, a petition may introduce additional evidentiary support after the petition stage if the evidence is a legitimate reply to evidence introduced by the patent owner. Here, USR made arguments in its patent owner response based on the very passage that the board found had not been previously addressed, which Apple then directly responded to in its reply. Moreover, USR had an opportunity to address those arguments in its third reply, and the board's failure to consider Apple's reply was errored. Judge Toronto, can I ask, this is I guess sort of a procedural question that seems to come up rather a lot. The director's regulation, I think it's the regulation or maybe it's just the trial practice manual, talks about that reply can respond to the patent owner response. As I understand what the board has done, to my mind quite sensibly, is not quite to take those words literally, because it would not be within the spirit of that to say that you make no case on a point in the petition. The patent owner responds and says, you don't make a case in the petition, and you couldn't have made a case, and now suddenly the reply gets to make a brand new case. That would in some sense be responsive to the patent owner response, but that can't possibly be right, and the board doesn't do it that way. So you can't, that is, fill a gap. All you can do in the petition, all you can do is explain and defend why what you did say was sufficient. If that's right, and I think that's both the board's practice and what the board's practice has to be, what would that idea do to the issue in this case? Your Honor, I think in this case, there's no dispute that Apple raised the argument and raised the combination of the references in its petition and explained that a skilled artisan would have combined those references. In response to USR's argument, which relied on a particular passage in the specification, Apple then explained why their reading of that passage was incorrect. So all of the evidence and arguments were already in the record as a result of Apple's petition, and Apple was merely responding to the arguments as USR raised them. So even under that reading that Your Honor articulated, what Apple did in its reply brief here was proper within the board's regulations and also within this court's case law. Thank you. And the second issue that the board failed to consider is that Apple's argument on the third-party and relied on the combination of Reber and Franklin rather than Reber or Franklin alone. Reber teaches the directing of debiting and crediting of accounts, and Franklin details how this is accomplished by sending the transaction information to the bank's processing center. The board offered no explanation for its conclusory rejection of Apple's argument that the combination of those two references taught the third-party limitation, and that was their court's case law in grid energy solutions. I see that I am into my rebuttal time, so I'll just briefly touch on the last limitation, which is the access restrictions limitation and whether there was a requirement to perform that limitation at the secure registry rather than at the merchant's bank. Apple presented that argument in its petition, and the board was incorrect to disregard the argument in Apple's reply. Again, a skilled artisan, Apple explained, would have been motivated to move that step from the authenticating bank into the secure registry, and that would have been a simple design choice. If there are no further questions, I'll save the remainder of my time for rebuttal. Thank you. Mr. Matthews. Good morning, and may it please the court. The board's view is that the combination of Reber and Franklin didn't even come close to disclosing the claimed invention. The board found three independent, what it called dispositive reasons for upholding the validity of the 539 patent over the petition, and to win on appeal, Apple must essentially reverse all three of these grounds. I will say, with respect to the question that Judge Toronto raised, we would certainly agree that the interpretation of those guidelines at the patent office is exactly how Your Honor laid it out. It cannot be the case that when the petition is flawed, and in the patent owner response, the patent owner points out that flaw, that the petitioner would be allowed to then fill that gap by pointing to some other part of the prior disclosure or by introducing, either through attorney argument or with their expert, a new motivation to either combine or to make the modification. So that, in fact, has happened in a number of cases here in this petition because for each of the three independent dispositive reasons, this is a situation where the prior art doesn't disclose individually the limitations that are claimed, and so the combination of those two, the board found again and again, didn't create out of whole cloth or out of thin air a missing limitation. If we were to look at, for example, limitation 1D, which requires that the secure registry execute a restriction mechanism to determine whether compliance with access restrictions for the provider to secure data for the entity for completing the transaction based on at least an indication of the provider and the time-varying multi-character code was disclosed. The board didn't even focus on everything that's in that limitation because what the board focused on was where any merchant validation was taking place. The petition acknowledged that Reber discloses no merchant restriction mechanism at all and also that any merchant validation, that's why it's referred to in Franklin, takes place at the provider's or the merchant's acquiring bank and not at the secure registry. That's in the petition at Appendix 2779-80 and in the decision at Appendix 11-12. It's also important to remember what's not being challenged here. What the references do and do not explicitly disclose is not being challenged. The board was very clear on what they found in the art and what was not disclosed in the art and Apple isn't finding, hasn't ruled or challenging that the board's interpretation of the references is incorrect. Nor can the board be challenged at this point about the constructions of third party or account identifying information. Apple proposed the definition for account identifying information and didn't challenge the construction for third party as well. With respect to limitation 1D, the board found that Franklin's known technique was validating at the acquiring bank, not the secure registry and found that the petition provided no reason for a skilled artisan to move Franklin's merchant validation from the merchant bank to the secure registry. That's at Appendix 13. No rationale or persuasive reason for doing so. And Apple pointed to generic reasons for using Franklin generally to prevent merchant fraud and the board said those reasons do not further justify the modification. In fact, at Appendix 14, the board said, the petition identifies no prior art disclosure that taught or suggested to skilled artisans to implement access restrictions at the secure registry. In other words, you can't take two references, neither of which disclose a limitation, and combine them to create out of thin air the missing limitation. Well, the crucial part is the out of thin air. You could certainly add some additional reason, but your point is, and I think the board said, there wasn't such an additional explanation provided. That's correct. I think that's why the emphasis on that sentence at Appendix 14 is, the petition identifies no prior art disclosure. There's no indication of any, but Reber doesn't even check merchants because Reber trusts merchants across the board. That's why Reber sends address and name information to the merchant because they want the merchant to complete the transaction by delivering the item. So there's no merchant checking that's even suggested in Reber. And so all that was left was a petition statement that said, well, Franklin checks merchants. It has something that says it's called merchant validation. But specifically as you look at the claim, there's no discussion in Franklin about checking the merchant to see if they have permission to access the secure data at the secure registry that's needed to complete the transaction. The merchant validation that's disclosed in Franklin is secure data agnostic. It doesn't matter what the actual transaction is. At least there's nothing disclosed. There's no prior art disclosure, as the board said. And so the fact that there's no disclosure in Franklin and no disclosure in Reber and no suggestion or reason provided by Apple's expert as to why that motivation to modify would be introduced into the combination, that was sufficient basis for that independent ground. The same can be said with respect to the missing third party. The board applied the same reasoning in concluding that Reber and Franklin did not disclose a claim limitation of providing account identifying information to a third party to enable or deny the transaction. And going back to the question that I think Judge Toronto raised about the determinant V, it's exactly correct that an entity, a customer, has lots of personal information. Can you address the specific point that the specification of this patent is counter to your view of the consequences of your view about the account identifying information? Yes, I can address that quickly. No, we disagree with that. Certainly there are a number of embodiments disclosed in the 539 with respect to allowing or disallowing or granting access to a requester to differing scopes of personal information. At appendix 47, for example, that's suggested at column 10, lines 18 through 27, where the person who's setting up their database, so the entity who's putting their secure data into the USR, into the secure registry, decides that, let's see if I can get what it says, it says for each type of data entered, the person is asked to specify the type of access restrictions and or whom should be allowed to access the advanced personal data. So the data, and then further on down in column 10, starting around line 40 and on to column 11, there's a discussion about when requesters come into the USR and request access, there's a determination to see whether they have access rights to that data. Now, looking at the claim, claim one, for example, as I said, it's certainly the case that an entity would have lots of types of personal information, but what's addressed in the claim is exactly what Your Honor had pointed out, which is it is the account identifying information that's necessary for the transaction and it is sent to the third party. That is the information that needs to be withheld from the provider. And in each case, in Reber and in Franklin, there is information sent to, well, I'll back up there. Actually, neither reference has a third party, but there is information that's sent to what would be the authorizing party, and a portion of that information is also shared with the bank. I'm sorry, with the merchant. And that's what takes us out of the claim. And as the board correctly noted, to read that provision, as Apple is suggesting, that it's okay to share some of the information that you give to the third party with the merchant, just not one piece of information, would trivialize the third party requirement and would also make the limitation overall meaningless. But I do want to go back to the third party omission, because that is the second independent ground, that there is no third party shown when they combined Reber and Franklin. Recall that the board found that the claims include four categories of parties. There's a secure registry. There are entities with secure data stored at that registry. There's a provider with whom an entity is trying to transact. And then there's a third party who receives account-identifying information to enable or deny the transaction. And the board construed third party at Appendix 9 as a party that is not the secure registry, the entity, or the provider. And the board correctly determined that the third party must be distinct from the other parties in the claim, including the secure registry. And in concluding that no third party is in the prior art, the board determined first that Reber does not expressly disclose any third party and that while Apple asserted that Franklin discloses a third party, the board correctly determined that Franklin's entire back-end system that's shown in Figure 7 as the Bank Computing Center 32 at Appendix 1513 is operated by a single entity that also operates what Apple was mapping to the secure registry. And the board said the third party must operate independently from the secure party in Figure 7. And what's shown there is all the processing system, both the back-end processing system and what would be mapped to the secure registry are all part of the Bank Computing Center. And to read this claim otherwise and that requirement for third party otherwise both trivializes the third party claim requirement and the board found lacks sufficient support for configuring the system to use a third party as claimed. Mr. Matthews, this is Judge Toronto. Can I ask you the same question that I think the chief asked of the other side? On the assumption that the Delaware District Courts 101 invalidity ruling is affirmed, what's your view of the proper disposition of the present IPR matter? I would agree with the discussion earlier, which is if Judge Connolly's 101 decision is affirmed, then that would moot all of the IPR appeals. Including the conditional motion to amend, which was conditional on the board validation. So that's not present in these appeals, if you're referring to the one in 20-1223? Is that the one you're referring to? No, no. My understanding is that in the two appeals this morning, there were unruled on conditional motions to amend. But the motions say, we want you to rule on those if you, the board, invalidate the particular underlying claims, which would not be a trigger for, and the 101 invalidity ruling out of Delaware would not be a trigger for that. I just want to confirm that. I think that that sounds right to me. That sounds right to me, Your Honor, as well. The trigger for that was for the board to invalidate claims. I don't think there is a way to get back to the conditional motion through an affirmation of the 101 ruling. Okay, thanks. I do want, I'm sorry, was there a question? No, proceed. Okay, so there was a suggestion that perhaps in the briefing and also in the arguments of the board that, well, it wouldn't have taken much to move the third party or to decide to add a third party to the combination, even if no third party is explicitly disclosed. Why wouldn't you just add a third party and have the transaction enablement be handled by the third party? And that argument was made to the board, and the board said, well, that's fine, except you didn't provide any reason. You didn't adequately show why a skilled artisan would configure that system. And in doing so, decide to separate the user authentication and leave that at the secure registry from the transaction enablement and move that to this third party that you're creating. The board found that the petition asserts that a skilled artisan would understand that Reber's database could be controlled by a third party, but this possible configuration alone did not give them reason to look to, wouldn't give a skilled artisan reason to look to another reference. And the board agreed with USR that Apple's reasoning regarding why you might decide to withhold all account-identifying information from the provider, for example, to protect the user's account information from misappropriation, does not provide reasoning for submitting the transaction enablement to a third party. And lastly, I'd like to talk about the third ground, the third independent ground, which is that with respect to the claim limitation that the entity's account-identifying information that's provided to the third party is withheld from the provider. I think we've discussed what we're talking about with respect to which third party information, and so with that I would just conclude by saying that based on the three independent grounds, we would ask that the court affirm the lower tribunal's decision. Thank you. Thank you, Mr. Matthews. Ms. Imandi, you've got some time, a few minutes left on rebuttal, I believe. Yes, thank you, Your Honor. I just want to make three points briefly. First, with respect to the access restrictions limitation and where that takes place, the board agreed that Franklin disclosed merchant validation. The issue here was just where that merchant validation occurred and whether it occurred at the acquiring bank or at the secure registry. Apple explained in its petition that it would have been no more than a simple design choice to move the merchant validation step to the secure registry. We explained at Attendix 2773 that this combination would have had the predictable result of streamlining the authentication process. We then further expanded on that argument in the reply brief, explaining that one reason for organizing the system in this way would be to increase efficiency by reducing the overall number of computations. The board failed to and refused to consider these arguments, and so it would be appropriate to remand to the board to consider for full consideration of the arguments that Apple raised. The second point is with respect to Judge Toronto's question about the specification. I believe Mr. Matthews pointed to column 10, lines 18 to 27, discussing the setting of who should be allowed access to particular information in the database. But that passage supports Apple's construction or interpretation of the claim. Just below that passage, also in column 10, the specification makes clear that the database will generally allow anyone to access specific personal information without performing any authorization check, and that only when there's particular information that has been restricted is that information withheld. The system goes on to describe the various embodiments that describe withholding some account-identifying information based on the particular circumstances and providing that withheld information to the third party. The third point I'll make is with respect to the... I see I'm at the end of my time. If you can make it very briefly, Ms. Simondi, go ahead. Thank you, Judge Peirce. The third point is with respect to the third-party limitation. I think the arguments that we heard from Mr. Matthews really highlight why the board committed an error here because it was the combination of Franklin and Reber and looking at Reber's system that disclosed a database for authentication purposes and that a skilled artisan would have looked at other sources, such as Franklin, for how to complete that transaction by sending the information to a third-party bank for processing as taught in Franklin. And it's the combination of those two references, which the board failed to consider, that teach the third-party limitation. Thank you, Your Honor. Thank you. Thank you. We thank both sides, and the case is submitted.